```
                                                              1

            IN THE UNITED STATES BANKRUPTCY COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION


In re:                        )
                              ) No. 09 B 37463
R&G PROPERTIES,               )
                              ) Chicago, Illinois
                              ) December 3, 2009
            Debtor.           ) 9:30 a.m.


       TRANSCRIPT OF PROCEEDINGS BEFORE THE
          HONORABLE A. BENJAMIN GOLDGAR

APPEARANCES:

MR. DAVID WELCH
MR. SCOTT CLAR
on behalf of the debtor;

MR. RICHARD FIMOFF
on behalf of American Enterprise Bank;

MS. ROSANNE CIAMBRONE
MR. RICK DARKE
on behalf of America United Bank.
```

EXHIBIT B

1  would suggest to you that there's more than
2  sufficient grounds to find it's property of the
3  estate, especially under the all-encompassing
4  definition in 541.  Thank you.
5         THE COURT:  Thank you, Mr. Welch.
6              All right.  I've heard the evidence.
7  I don't think there's a great deal of dispute about
8  the facts, except to the extent that Mr. Michael
9  contradicted a number of documents.  I think the
10 bank has the better of the argument, and I'm going
11 to deny the motion as to all of the properties.
12             The law isn't quite as cut and dried
13 as either side makes out.  The bank says it's
14 statutory now, so we don't have to look at cases
15 anymore.  And the debtor's attitude is more along
16 the lines of let's look at the K&L case from the
17 court of appeals and ignore the statute.  But, of
18 course, K&L was decided before the Uniform
19 Partnership Act was revised and the revised act
20 adopted in Illinois in 2003.
21             Partnership law has been statutory
22 in Illinois since World War I.  The revised version
23 of the Uniform Partnership Act, which was adopted in
24 Illinois, I believe, in 1917, true it became fully
25 effective in 2008 and was adopted in 2003, but still

1  we've had a statute for quite a long time. The
2  cases are immensely confusing, and most of them were
3  decided before about 1955. Apparently nobody does
4  business as a general partnership anymore.
5           And I can't say that they are
6  consistent. And although we have a uniform act and
7  have had one in this country for almost a century, I
8  can't say that the cases from around the country are
9  particularly consistent either. What we are dealing
10 with is a statute, and I really don't find the K&L
11 case to be particularly helpful to the debtors here.
12          The statute makes clear when
13 property is partnership property, and, of course,
14 under Section 541 we're looking at state law,
15 Section 204(a) does indeed focus on the acquisition
16 of the property. Section 204(a) says that property
17 is partnership property if acquired in the name of
18 (1) the partnership or (2) one or more partners with
19 an indication in the instrument transferring title
20 to the property of the person's capacity as a
21 partner, and then there are a series of presumptions
22 later on. In (b), there's also a discussion of when
23 we can say that property is, in fact, acquired in
24 the name of the partnership.
25          These properties were originally

1   acquired by the Michaels brothers before there was a
2   partnership, with one exception, which I'll get to.
3   And I don't think that acquisition is, as Mr. Welch
4   points out, the one on which the debtor is relying.
5   I would point out, however, that even though it
6   doesn't say it in the statute itself, generally
7   speaking, record title is what matters. And the
8   comments to the uniform law make it clear that,
9   generally, under the revised Uniform Partnership
10  Act, partners and third parties dealing with
11  partnerships will be able to rely on the record to
12  determine whether the property is owned by the
13  partnership. That's comment four, the official
14  comments.
15           And then comment two, which
16  discusses Sections (a) and (b), says the concept of
17  record title is emphasized, although the term itself
18  is not used. And that's clear, I think, from the
19  fact that they're talking about acquisitions and the
20  fact that the property has to be acquired in a
21  particular name.
22           The problem that the debtors run
23  into here, aside from record title, is that the
24  transfer, if there was ever any sort of transfer,
25  was not really a transfer at all. It was just sort

1  of the de facto treatment by the partnership and the
2  Michaels brothers of these properties as partnership
3  property. There was never any kind of document
4  transferring these properties to the partnership.
5  In fact, I'm not even sure that there was an oral
6  agreement to, except that Mr. Michaels said, well,
7  we decided it was our intent to put these into the
8  partnership. And I'm not quite sure what that
9  means.
10           Because we're looking at
11  Section 204, and because of the nature of the
12  dispute here, what the Michaels brothers intended to
13  do is not the question. It's quite confusing in the
14  case law and the other authorities, but it appears
15  to me that intent is relevant only when you have a
16  dispute between partners. And here we have
17  something that's a little bit unusual when it comes
18  to partnership property disputes. We have a dispute
19  with the partners on one side and a third party on
20  the other.
21           But the authorities that I've seen
22  make it clear that that is not -- the intent is not
23  the relevant criterion when we're talking about
24  third parties. And, in fact, the official comment
25  to the uniform act makes that clear when it says

1  that ultimately it is the intention of the partners
2  that controls, at least as among the partners
3  themselves.  And based on that, any number of
4  authorities have said that intent is not the
5  question when we have a dispute like the one we have
6  here.
7            I also haven't seen anything that
8  talks about these disputes as depending on the third
9  party's reliance on or whether the third party was
10 surprised.  I mean, it may be that the bank here
11 knew that there was a partnership called R&G, but so
12 what.  And, similarly, you know, the partnership,
13 there is some evidence to suggest the partnership
14 here treated these various properties as partnership
15 property by maintaining them and by taking in the
16 rents and whatnot.  But, again, so what.  That's not
17 what the statute makes relevant.
18           So what we have is the properties
19 originally acquired by the two individuals before
20 the partnership ever existed.  They're still the
21 record owners.  The property was never acquired by
22 the partnership itself.  No contract was admitted.
23 Nine of the ten properties weren't purchased with
24 partnership assets, or at least there's no claim
25 that there was.

98

1       And I'd also point out that whatever
2  agreement there was, and I'm not even finding that
3  there was one, to transfer these properties to R&G,
4  the debtor, was an oral agreement. And there's a
5  fair amount of authority that says that an agreement
6  of that kind violates the statute of frauds and, in
7  fact, is insufficient to vest the properties in the
8  partnership itself. And there's actually an ALR
9  note from 1956 that says -- it's at 45 ALR 2d 1009
10 that says in Section 2, the summary, there is
11 substantial authority that before the land can
12 become a partnership asset there must either be a
13 memorandum sufficient to satisfy the requirements of
14 the statute of frauds or equitable considerations of
15 part performance, et cetera, sufficient to take the
16 case out of the statute.
17       And Tiffany on Real Property in
18 Section 446 says, in spite of the frequency with
19 which it is stated that whether particular land is
20 to be regarded as belonging to the partnership is a
21 question of intention. Such a view is not entirely
22 satisfactory as applied to a case in which this
23 intention does not appear in writing signed by the
24 holder of the legal title. The statute of frauds
25 requires an express trust in land to be evidenced by

1  writing, and a trust, whether for the purposes of a
2  partnership or for other purposes, insofar as it is
3  directly based on intention, is an express trust.
4  In those cases in which the property is not acquired
5  with partnership funds or under a promise to hold it
6  for the benefit of the partnership, as when a
7  partner orally agrees to consider land belonging to
8  him as partnership property, the difficulty of
9  giving effect to his intention so expressed without
10 a violation of the statute of frauds would seem to
11 be insuperable, a view which is indicated with more
12 or less clearness in a number of cases.
13            Now, you know, usually the statute
14 of frauds has to do with whether an agreement is
15 enforceable or not.  And here the agreement would
16 be, I suppose, between the Michaels brothers and the
17 partnership.  And no one is trying to enforce the
18 agreement against another.  But, still, when we're
19 talking about rebutting presumptions, and when we're
20 talking about whether there is an agreement, I think
21 it's significant that whatever agreement existed
22 here, and I'm not entirely convinced there was one
23 since it seems to have been created kind of
24 conveniently without any sort of writing, it would
25 have been an unenforceable agreement anyway.

100

1           That leaves us with the 5551 North
2 Central property. Again, that's record property,
3 property that is the record title holders of which
4 are the Michaels brothers. There was no assertion
5 that the agreement to transfer properties to the
6 partnership, which apparently existed, if it existed
7 at all at the time the partnership was created, that
8 there was any similar agreement with respect to this
9 property. It may have been simply assumed, but I
10 think a lot of assumptions were made by the Michaels
11 brothers about what they were doing and not a lot of
12 care was taken, frankly.
13           Mr. Michael testified that this
14 property was purchased with partnership funds, and
15 that, I suppose, would raise a presumption under
16 Section 204(c) that it's presumed to be partnership
17 property. But there was no corroboration, there was
18 no sort of check, although we have plenty of other
19 transaction documents here.
20           And, you know, I really am not
21 inclined, given Mr. Michael's evasiveness on other
22 points and his assertion that all kinds of documents
23 in which he said he was the owner of this property,
24 I'm really not inclined to find his statement that
25 this property was purchased with partnership funds

101

1  to be credible.  There's nothing supporting it.
2              Now, the fact of the matter is that
3  these kinds of documents, financial statements and
4  so on, and deeds and leases and the like, matter.
5  And, you know, if you're going to sign a financial
6  statement that says that you don't even have any
7  partnership income and all the properties are really
8  yours, and there wasn't any question that at least
9  some of these financial statements were signed by
10 Mr. Michael, although he denied the signature on
11 one, you know, those financial statements say that
12 the undersigned represents, warrants, and certifies
13 that the information provided herein is true,
14 correct, and complete.
15             I think what we have here is just a
16 case of massive sloppiness, frankly.  I think that
17 the Michaels were not careful about what they did
18 and how they did it.  And these kinds of formalities
19 matter.  And under the Partnership Act in Illinois,
20 they certainly matter a great deal in determining
21 what partnership property is.  This is not a case
22 where we can make the determination based on a
23 scorecard that shows intent one way or the other.
24 Here, it's a matter of the formalities and how this
25 property was acquired.  And I simply haven't seen

102

1  enough evidence to suggest that any of these
2  properties is partnership property under the
3  Illinois Uniform Partnership Act in its current
4  incarnation. So for those reasons, I will deny the
5  motion to use cash collateral.
6          MR. DARKE: Thank you, Your Honor.
7          MS. CIAMBRONE: Thank you, Your Honor.
8          THE CLERK: All rise.
9
10              (Which were all the proceedings
                had in the above-entitled cause,
11              December 3, 2009.)
12
13  I, GARY SCHNEIDER, CSR, RPR, CRR, DO HEREBY CERTIFY
    THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT
14  OF PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE.
15
16
17
18
19
20
21
22
23
24
25