**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Bankruptcy No. 09-37463 |
| R & G PROPERTIES, | ) | |
| an Illinois general partnership | ) | Judge A. Benjamin Goldgar |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

### NOTICE OF MOTION

**To:    See Attached Service List**

     PLEASE TAKE NOTICE that on the 6th day of January, 2009, at 9:30 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable A. Benjamin Goldgar or any other judge sitting in his stead, in courtroom 613, 219 S. Dearborn Street, Chicago, Illinois, and shall then and there present AmericaUnited Bank and Trust Company USA's Motion to Terminate the Automatic Stay, a copy of which is hereby served upon you.

                                             Respectfully Submitted,

                                             **AMERICAUNITED BANK AND TRUST COMPANY USA**

                                             By: /s/ Rosanne Ciambrone
                                                      One of its Attorneys

Rosanne Ciambrone (A.R.D.C. #6199456)
Richard P. Darke (A.R.D.C. #6255810)
Matthew A. Olins (A.R.D.C. #6275636)
DUANE MORRIS LLP
190 South LaSalle Street, Suite 3700
Chicago, Illinois  60603
Telephone:  (312) 499.6700
Facsimile:  (312)  499.6701

## **CERTIFICATE OF SERVICE**

I, Rosanne Ciambrone, an attorney, certify that on December 31, 2009, I caused a copy of the foregoing Notice of Motion and AmericaUnited Bank and Trust Company USA's Motion to Terminate the Automatic Stay to be served by electronic notice upon filing on this Court's ECF System and upon the parties on the attached service list via email.

/s/ Rosanne Ciambrone

Rosanne Ciambrone (A.R.D.C. #6199456)
Richard P. Darke (A.R.D.C. #6255810)
Duane Morris LLP
190 South LaSalle Street
Suite 3700
Chicago, Illinois  60603
Phone: (312) 499-6700
Fax: (312) 499-6701

**SERVICE LIST**

United States Trustee
219 S. Dearborn Street, #873
Chicago, IL 60604
Email:  Gretchen.Silver@usdoj.gov
Fax:  312.886.5794

David Vallas
Wildman Harrold Allen & Dixon LLP
225 W. Wacker Drive, Suite 3000
Chicago, IL 60606-122
Email:  Vallas@wildman.com
Fax:  312.201.2555

Tina Jacobs
Jones & Jacobs
77 W. Washington, Suite 2100
Chicago, IL 60602
Email:  tjacobs@jonesandjacobs.com
Fax:  312.419.9114

Mitch Lieberman
Noonan & Lieberman Ltd.
105 W. Adams St., Suite 3000
Chicago, IL 60603
Email: MLieberman@noonanadlieberman.com
Fax:  312.431.1456

Robert Rabin
Robbins Salomon & Patt Ltd.
25 E. Washington, Suite 1000
Chicago, IL 60602
Email:  rrabin@rsplaw.com
Fax:  312.782.6690

Allen C. Wesolowski
Martin & Karcazes, Ltd.
161 North Clark Street
Suite 550
Chicago, IL 60601
Email:  ACWesolowski@Martin-Karacazes.com
Fax:  312.332.4905

David K. Welch
Crane, Heyman, Simon, Welch & Clar
135 S. LaSalle Street, Suite 3705
Chicago, IL 60603
Email: dwelch@craneheyman.com
Fax: 312.641.6777

Richard C. Perna
Tejal S. Desai
Fuchs & Roselli, Ltd.
440 W. Randolph Street
Suite 500
Chicago, IL 60606
Email: RPerna@FRLtd.com
Fax: 312.651.2499

Greta G. Weathersby
c/o The Peoples Gas Light
 and Coke Company
130 E. Randolph, 19th Floor
Chicago, IL 60601
Email: GGWeathersby@integrysgroup.com
Fax: 312.240.4219

Keevan Morgan
Morgan & Bley Ltd.
900 W. Jackson Blvd.
Suite 4E
Chicago, IL 60607
Email: KMorgan@MorganandBleylimited.com
Fax: 312.243.0009

4

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Bankruptcy No. 09-37463 |
| R & G PROPERTIES, ) | |
| an Illinois general partnership ) | Judge A. Benjamin Goldgar |
| ) | |
| Debtor. ) | |
| _____ ) | |

**MOTION OF AMERICAUNITED BANK AND TRUST COMPANY USA
TO TERMINATE THE AUTOMATIC STAY**

AmericaUnited Bank and Trust Company USA ("*AmericaUnited*"), by and through its undersigned counsel, hereby moves this Court for relief from the automatic stay pursuant to section 362(d)(1), (2) and (4) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the "*Bankruptcy Code*"), to the extent the stay applies to collateral of AmericaUnited (the "*Motion*"). In support of this Motion, AmericaUnited respectfully states as follows:

**BACKGROUND**

1. On or about October 30, 2003, and again on or about April 30, 2007, AmericaUnited entered into loan agreements (collectively, the "*Loans*") with the Debtor and its two general partners, Robert Michael and George Michael individually (collectively, the "*Michaels*"), each of whom are jointly and severally liable for repayment of the Loans. True and correct copies of the Notes evidencing the Loans are attached as Exhibit A and Exhibit B hereto.

2. As security for payment of the Loans, the Michaels granted AmericaUnited mortgages (the "*Mortgages*") on those parcels of real property identified in Exhibit C hereto (the "*Collateral Properties*"). True and correct copies of the Mortgages are attached hereto as Exhibit D and Exhibit E. AmericaUnited also received as security assignments of rents (the "*Assignments of Rents*") with respect to proceeds generated by the Collateral Properties. True

and correct copies of the Assignments of Rents are attached hereto as <u>Exhibit F</u> and <u>Exhibit G</u>.

3.  The Michaels and the Debtor have been in default of their obligations under the Loans beginning in August 2009; AmericaUnited has accelerated all of the obligations of the Michaels and the Debtor under the Loans.  The Michaels and the Debtor are indebted to AmericaUnited in an amount in excess of four million dollars ($4,000,000).

4.  On October 8, 2009, the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*").

5.  On October 12, 2009, the Debtor filed a motion seeking authority to use the rents from the Collateral Properties as cash collateral (the "*Cash Collateral Motion*").  (Docket No. 9.)  AmericaUnited objected to the Cash Collateral Motion, arguing that the Debtor does not hold title to the Collateral Properties and is not a grantor under the Mortgages or the Assignments of Rents, and that the Collateral Properties and the rents generated there from are not property of the Debtor's estate.

6.  This Court held an evidentiary hearing on the issue of whether the Collateral Properties are property of the Debtor's estate on December 3, 2009.  At that hearing, this Court found that the Collateral Properties are not property of the estate and denied the Debtor's Cash Collateral Motion as it related to the Collateral Properties.  (Docket No. 108.)  ("Here, it's a matter of the formalities and how this property was acquired.  And I simply haven't seen enough evidence to suggest that any of these properties is partnership property under the Illinois Uniform Partnership Act in its current incarnation.  So for those reasons, I will deny the motion to use cash collateral." Dec. 3, 2009 Transcript at p. 101, pertinent portion attached as <u>Exhibit H</u>.)

7.  On December 16, 2009, AmericaUnited filed a foreclosure complaint against the Michaels, seeking to foreclose on the Collateral Properties, as well as a judgment against the

2

Michaels for amounts due under the Notes, which is pending as Case No. 09 CH 50509 in the Circuit Court for Cook County, Illinois, County Department, Chancery Division (the "*Foreclosure Proceeding*"). AmericaUnited also filed a motion to appoint a receiver, which was initially heard on December 21, 2009, and to which the Debtor objected. The court in the Foreclosure Proceeding set a briefing schedule on the motion to appoint a receiver, which is set for hearing on January 11, 2009.

8. On December 16, 2009, the Debtor filed its Motion for Authority to Complete Conveyances of Undeeded Properties to the Debtor. (Docket No. 122). AmericaUnited objected to the motion. (Docket No. 127.) This Court denied this motion on December 23, 2009. (Docket No. 130.) A copy of the transcript of the hearing on the motion and this Court's oral ruling is attached as Exhibit I.

9. On December 29, 2009, the Michaels deeded (the "*Deeds*") the Collateral Properties to the Debtor (the "*December 29th Transfer*"). Copies of the Deeds are attached hereto as Exhibit J. AmericaUnited brought a motion for a temporary restraining order in the Foreclosure Proceeding attempting to bar the Michaels from deeding the properties to the Debtor, which the Foreclosure Court denied, citing the possibility that AmericaUnited may have a remedy before this Court. A copy of order denying the motion for a temporary restraining order is attached hereto as Exhibit K.

## RELIEF REQUESTED

10. AmericaUnited brings this Motion to terminate the stay under sections 362(d)(1), (2) and (4) of the Bankruptcy Code to allow it to continue with the Foreclosure Proceeding in all respects, including, without limitation, appointing a receiver for the Collateral Properties, and to allow it to collect and apply any rents or other proceeds generated from the Collateral Properties.

This Court has already found that the Collateral Properties are not property of the Estate (at least prior to the December 29th Transfers). The transfers that the Debtor has repeatedly asserted occurred prior to R & G's bankruptcy simply never were undertaken. (Exhibit I, December 23rd Transcript at pp. 5-6; Exhibit H, December 3rd Transcript at pp. 99-101.) The Michaels' December 29th Transfer of the Collateral Properties to the Debtor constitutes cause to terminate the automatic stay. The transfers are a sham undertaken to protect the Michaels and to inappropriately invoke the automatic stay and the protections of the Bankruptcy Code. The transfers deprive AmericaUnited of its rights under its loan documents and the benefit of its bargain that it struck at the time it loaned the Michaels and R & G over four million dollars. The Michaels have a legitimate option here---they themselves could file for bankruptcy. This elaborate procedural charade that began back in October is designed for one purpose—to shield the Michaels from bankruptcy while obtaining the benefits of a bankruptcy for the Collateral Properties.

## JURISDICTION

11.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G).

## ARGUMENT

### A.    AmericaUnited is Entitled to Relief From the Automatic Stay Under 11 U.S.C. § 362(d)(1) For Cause

12.    Section 362(d)(1) of the Bankruptcy Code permits the automatic stay to be terminated for "cause", including, without limitation, the lack of adequate protection of a party's interest in property. 11 U.S.C. § 362(d)(1). The decision of whether to lift the stay for cause under section 362(d)(1) is committed to the sound discretion of the bankruptcy court. *In re C&S Grain Co.,* 47 F.3d 233, 238 (7th Cir. 1995) (citing *In re Boomgarden*, 780 F.2d 657, 660 (7th

4

Cir. 1985)). As a preliminary matter, there is no cash collateral order in place, and the interests of AmericaUnited in the Collateral Properties and the rents are not adequately protected.

13. While a lack of adequate protection is the most common basis for granting relief for cause, there are other bases for a cause finding. 3 COLLIER ON BANKRUPTCY ¶ 362.07[3][a] (15th ed. rev. 2009). "[A] court may grant a party relief from the stay if it finds that the moving party's interest in the property can be better protected or for any other cause the court finds to be worthy." *C&S Grain Co.,* 47 F.3d at 238.

14. Numerous courts have found that cause may exist when the debtor has commenced the case in bad faith. While there is no precise test for determining bad faith, courts look to factors which show "an intent to abuse the judicial process and the purposes of the reorganization provisions." *Barclays-American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broadcasting, Inc.)*, 871 F.2d 1023, 1027 (11th Cir. 1989) (debtor filed for bankruptcy protection in an effort to avoid a sale agreement; the Eleventh Circuit held that findings of bad faith were supported and found that relief from the automatic stay was appropriate). Whether the current factual situation is labeled "bad faith", or something less, it should serve as cause to terminate the automatic stay to allow AmericaUnited to proceed with its Foreclosure Proceeding and to have a receiver appointed for the Collateral Properties.

15. For example, where a single-asset debtor was created and acquired possession of real property one day before it filed for bankruptcy relief, apparently driven by a desire to prevent foreclosure, the United States Court of Appeals for the Sixth Circuit found that the debtor had filed for bankruptcy in bad faith and that cause existed for granting relief from the automatic stay to the mortgagee. *Laguna Associates, L.P. v. Aetna Casualty & Surety Co. (In re Laguna Associates, L.P.)*, 30 F.3d 734 (6th Cir. 1994); *see also Duvar Apt., Inc. v. FDIC (In re*

*Duvar APT, Inc.)*, 205 B.R. 196, 200-01 (B.A.P. 9th Cir. 1996).  This is often referred to as the "new debtor syndrome."  The court in *Duvar* held:

> A creditor can establish a prima facie case of bad faith filing by showing the transfer of distressed property to the debtor within close proximity to the bankruptcy filing.  Once a prima facie case is established, the burden shifts to the debtor to demonstrate a good faith business reason for the transfer and the filing.  If in addition to the prima facie showing of bad faith, the creditor proves that its substantive or procedural rights have been adversely affected by the transfer and filing, cause is established pursuant to section 362(d)(1) and the Court must lift the stay.

*Id*. (citations and quotations omitted).

16. Here, a slightly different but highly analogous situation exists.  *See, e.g., Northern Acres, Inc. v. Hillman State Bank (In re Northern Acres, Inc.)*, 52 B.R. 641, 649 fn.7 (Bankr. E.D. Mich. 1985) (two individuals deeded properties to the debtor corporation subsequent to the debtor's petition for relief; the court found the situation analogous to cases wherein the debtor acquired property shortly before the petition for relief had been filed; "If we find that the purpose of the transfer from the Mauls back to [the debtor] was merely to activate the automatic stay, that alone might constitute "cause" to lift the stay.").  The Michaels, in an effort to shield the Collateral Properties from foreclosure, and the Michaels from bankruptcy, have transferred the Collateral Properties to the Debtor.  The transfer after the R & G bankruptcy filing, after two previous attempts by the Michaels to avail themselves of the protections of the Bankruptcy Code had failed, constitutes cause to lift the stay.  There is no good faith business reason for the transfer.  The Michaels are attempting to reap the benefits of a bankruptcy proceeding (and the automatic stay) without its attendant obligations.  The transfer of the Collateral Properties was in bad faith; even if not rising to the level of bad faith, it is conduct egregious enough to support terminating the stay.

6

17. AmericaUnited believes that cause exists under section 362(d)(1) to lift the stay and this Court need go no further. However, in the alternative, AmericaUnited is also entitled to relief from the automatic stay under sections 362(d)(2) and (4).

### B. AmericaUnited Is Entitled to Relief from the Automatic Stay Under 11 U.S.C. § 362(d)(2) Because the Debtor Does not Have Equity in the Collateral Properties, and the Collateral Properties Are Not Necessary to an Effective Reorganization

18. Section 362(d)(2) of the Bankruptcy Code mandates relief from the automatic stay if the debtor has no equity in a secured creditor's collateral, and if the collateral is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). Courts have interpreted this statute to mean that a debtor must demonstrate "not merely a showing that, if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means ... that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *United Savings Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 375, 376 (1988) (citations omitted and emphasis in the original).

19. The Debtor has no equity in the Collateral Properties. It acquired them, on information and belief, for no consideration and never held title prior to December 29th. A fraudulent conveyance complaint is pending against the Michaels in the Foreclosure Proceeding, and AmericaUnited is preparing an adversary complaint against R & G and the Michaels to be filed in this case. *See* 740 ILCS § 160/5. The transfer of the Collateral Properties was not only made with an actual intent to hinder and delay AmericaUnited, it was made for <u>no consideration</u>[1]

---

[1] On information and belief, the Michaels received no consideration for the transfers. If the Debtor did provide consideration, it could not have been in the ordinary course of business and was made without authorization of this Court, in violation of section 363 of the Bankruptcy Code.

7

at a time when the Michaels indisputably are not paying their debts as they become due (AmericaUnited has not received payment on the Loans since August of this year). In a case such as this, where title was transferred through a fraudulent conveyance, the debtor holds only bare legal title; the Debtor thus has no equity in the Collateral Properties.

20. The Collateral Properties cannot be necessary to a successful reorganization of the Debtor because they were never owned by the Debtor to begin with. The Debtor cannot now argue that because it <u>wants</u> the Collateral Properties to be in the estate that this somehow is enough to justify its acts in this situation. AmericaUnited has not been paid since the July 2009 payment that was made in August 2009, despite the fact that the rental streams from the Collateral Properties should be sufficient to support the required payments on the Loans. On information and belief, the rental streams have instead been diverted to some other use in violation of Notes, the Mortgages and the Assignments of Rents, all to the detriment of AmericaUnited. The fact that the Debtor would like the ability to use the rental streams from the Collateral Properties in this bankruptcy case does not mean that they are necessary to its reorganization. The fact that the Michaels would like to shield the Collateral Properties from AmericaUnited without themselves filing for bankruptcy and the recording of the deeds to serve this purpose is an abuse of the bankruptcy process.

    **C.    AmericaUnited Is Entitled to Relief from the Automatic Stay Under 11 U.S.C. § 362(d)(4)**

21. Section 362(d)(4) of the Bankruptcy Code permits the automatic stay to be terminated as follows:

> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved either—

>   (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval.

11 U.S.C. § 362(d)(4). There is no question here that "A" is met—the Collateral Properties were transferred from the Michaels to the Debtor without the consent of AmericaUnited and without Court approval. The issue is whether "the filing of the petition was part of a scheme to delay hinder and defraud" AmericaUnited. This requires a creditor to show, in the conjunctive, a scheme to delay, hinder and defraud.

22.     In this case, while the filing of the petition itself is not implicated, it was the transfer of the Collateral Properties to the Debtor post-petition that had the same practical effect—to delay, hinder and defraud AmericaUnited. AmericaUnited is forestalled here from pursuing its remedies under its loan documents and state law; collection of its debt has become more difficult through the wrongful conduct of the Michaels and the Debtor in transferring the Collateral Properties into the estate. As to "defraud", at least one court has held that proving common law fraud is not required. *In re Young*, Case No. 06-80534, 2007 Bankr. LEXIS 229, at *26-27 (Bankr. S.D. Tex. 2007) (the deception or fraud must only be part of the scheme). Here, given the history, the Michaels' recordation of the deeds without AmericaUnited's consent, depriving AmericaUnited of its contractual and state law remedies, is an act of deception in furtherance of the Michaels' scheme to hinder and delay AmericaUnited in the exercise of its remedies and realizing on the collateral that secures the Loans.

### STATEMENT AS TO ADEQUATE PROTECTION

23.     In an effort to simplify this Motion, AmericaUnited has not extensively argued adequate protection issues other than to note that a cash collateral order is not in place. AmericaUnited explicitly asserts that its interests in the Collateral Properties and the rents are not adequately protected. There is no cash collateral order in place, and AmericaUnited does not

consent to the use of its rents without the protection of a cash collateral order. Moreover, a Motion to Vacate the Entire Property at 3600-04 N. Pulaski was filed by the City of Chicago, and is set to be heard on January 12, 2009, a copy of which is attached hereto as <u>Exhibit L</u>. The City of Chicago seeks to vacate the entire property due to numerous Chicago Building Code violations. In addition, the rent rolls provided in the bankruptcy indicate that the rents at the properties are in decline. The market value for the Collateral Properties has declined by approximately 30% over the last two years. Because of the declining rents at the Collateral Properties and the continued decline in the Chicago real estate market, AmericaUnited fears it is not adequately protected. AmericaUnited believes that this Motion can be decided without addressing the complicated issue of adequate protection. If this Court determines otherwise, as well as in the context of any motion that the Debtor may bring to use cash collateral, AmericaUnited reserves the right to fully brief issues of adequate protection.

## WAIVER OF FED. R. BANKR. P. 4001(a)(3)

24. AmericaUnited requests that the fourteen-day stay provision of Federal Rule of Bankruptcy Procedure 4001(a)(3) be waived given the urgency of AmericaUnited's need to appoint a receiver and proceed with its Foreclosure Proceeding.

WHEREFORE, for the reasons stated above, AmericaUnited respectfully requests that this Court terminate the automatic stay as to the Collateral Properties and waive the fourteen-day stay provision of Federal Rule of Bankruptcy Procedure 4001(a)(3).

Dated: December 31, 2009

Respectfully Submitted,

AMERICAUNITED BANK AND TRUST COMPANY USA

By: /s/ Rosanne Ciambrone
     One of its Attorneys

Rosanne Ciambrone (A.R.D.C. #6199456)
Richard Darke (A.R.D.C. #6255810)
Matthew A. Olins (A.R.D.C. #6275636)
DUANE MORRIS LLP
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603
Telephone: (312) 499.6700
Facsimile: (312) 499.6701